IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GUILLERMO LUNA, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:15-CV-475-L-BH |
| | § | |
| BANK OF AMERICA NA, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSION, AND RECOMMENDATION

Pursuant to the standing order of reference dated March 13, 2015, this case has been referred for pretrial management. Before the Court is *Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Second Amended Petition*, filed April 14, 2015 (doc. 17). Based on the relevant filings and applicable law, the motion should be **GRANTED in part and DENIED in part.**

## I.  BACKGROUND

This case involves the attempted foreclosure of the property located at 1023 Elmsdale Place, Dallas, Texas 75224 (the Property). (*See* doc. 1-2 at 13.)[1] On January 27, 2015, Guillermo Luna (Plaintiff) filed this action in state court against Bank of America, N.A. (Defendant), Knutson Mortgage Corporation (Knutson), and "Does 1-10, Inclusive." (*See id.* at 5.) On February 11, 2015, Defendant removed the action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. (doc. 1.)

On April 1, 1992, Plaintiff's father (Jesse Dominguez Luna) acquired the Property via a general warranty deed. (doc. 13 at 3, 36.) On or about that same day, he and his wife (Aurora Luna) executed a deed of trust securing a loan from Knutson to them in the original principal amount of $45,550.00. (*Id.* at 3, 40-47.) His wife died intestate on September 20, 2003. (*Id.* at 3; *see id.* at

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

51.)  On or about May 24, 2012, Mortgage Electronic Registration Systems, Inc. (MERS) purported to assign the deed of trust to Defendant via an Assignment of Deed of Trust (the Assignment).  (*Id.* at 3, 48.)

Plaintiff's father died intestate on April 23, 2013.  (*Id.* at 4; *see id.* at 51, 54.)

The next year, Plaintiff listed the Property for sale.  (*Id.* at 4.)  He contends that on April 10, 2014, the listing agent for the Property informed him that Defendant had foreclosed on the Property. (*Id.*) Defendant allegedly gave Plaintiff and the other occupants of the Property seventy-two hours to vacate, so they vacated the Property. (*Id.*) Plaintiff sent Defendant what he termed a Qualified Written Request (QWR) on April 13, 2014, requesting that Defendant add him to the alleged mortgage account as an authorized agent. (*Id.* at 4, 52.) The QWR informed Defendant that his father was deceased, and that he believed the foreclosure was performed in error. (*Id.*) He asked that Defendant cease and desist all collection, foreclosure, or eviction activity, and send him certain documents related to his father's mortgage account within thirty days.  (*Id.* at 4, 52-53.)

Plaintiff contends that on April 15, 2014, Defendant placed locks on the Property.  (*Id.* at 4.) The next day, Defendant sent him a letter informing him that his father's two bank accounts were jointly owned and asking that Plaintiff make arrangements to remove his father's name from the accounts.  (*Id.* at 5, 56-60.)

Defendant responded to Plaintiff's QWR on May 2, 2014, by informing him that it could not respond until he provided evidence that he was the executor of his father's estate.  (*Id.* at 5, 61.)

On May 12, 2014, Defendant filed an Application for Dependent Administration in probate court, which listed Plaintiff's father's children as alleged heirs of his estate.  (*Id.* at 5, 63-66.)  The Application also requested that an attorney named Jennifer Ellis be appointed as Dependent Administrator of the estate, and it was purportedly sent to each of the named heirs.  (*Id.* at 13.)

2

Plaintiff alleges that he called Defendant's attorney, Mary Speidel, and told her that he would be recording an Affidavit of Facts Concerning the Identity of Heirs (Affidavit of Heirship). (*Id*. at 5.) Ms. Speidel allegedly informed Plaintiff that if he faxed her a copy of the Affidavit of Heirship, Defendant would withdraw its Application for Dependent Administration and give Plaintiff access to the Property and the "alleged mortgage account information." (*Id*.) Plaintiff filed the Affidavit of Heirship on May 17, 2014, and he informed Ms. Speidel that it had been filed on June 6, 2014. (*Id*.) She later informed him that she did not need a copy because she already had one. (*Id*. at 5-6.) She also informed Plaintiff that he would be able to speak with Defendant regarding his father's mortgage. (*Id*. at 6.) Plaintiff contends that he called Defendant on July 11, 2014, in order to obtain information about the mortgage account, but Defendant refused to talk to him about it. (*Id*.) That day, Ms. Speidel filed a motion to dismiss the Application for Dependant Administration, which Plaintiff contends was received by only three of his father's heirs. (*Id*. at 6, 71-72.)

On July 24, 2014, Plaintiff removed his father's name from the two bank accounts with Defendant. (*Id*. at 6.) He called Defendant on July 25, 2014, but Defendant refused to discuss his father's account with him. (*Id*.) It again requested that he fax a copy of the Affidavit of Heirship, which he did that same day. (*Id*.)

Defendant recorded a Removal of Trustee and Appointment of Substitute Trustee (the Appointment of Substitute Trustee) on July 31, 2014, in the Official Public Records of Dallas County. (*Id*. at 6, 87-90.)

On August 8, 2014, Defendant again refused to discuss the alleged mortgage account with Plaintiff. (*Id*.) He then called an attorney, who told him that the "best course of action" would be to send Defendant another letter. (*Id*. at 6-7.) On September 29, 2014, the attorney sent Defendant, Ms. Speidel, and the Consumer Financial Protection Bureau a letter on Plaintiff's behalf informing

Defendant that its conduct in locking Plaintiff out of the Property and refusing to talk with him about his father's mortgage account was negligent.  (*Id*. at 7, 92-93.)  The letter informed Defendant that Plaintiff would sue if it did not respond to him by October 3, 2014.  (*Id*. at 93.)

Defendant informed Plaintiff's attorney on October 10, 2014, that it could not respond to his letter until it received documentation that Plaintiff was the executor of his father's estate.  (*Id*. at 7, 95.)  On December 10, 2014, the attorney withdrew from his representation of Plaintiff.  (*Id*. at 7.)

On January 12, 2015, Defendant mailed a Notice of Acceleration and Notice of Posting and Foreclosure (the Notice of Acceleration) to Plaintiff's attorney.  (*Id*. at 7, 99.)  It also recorded a Notice of Trustee's Sale (the Notice of Sale) in the Official Public Records of Dallas County. (*Id*. at 7, 100-101.)

Plaintiff contends that when he filed suit on January 27, 2015, he was under the impression that Knutson was simply a dissolved corporation.  (*Id*. at 7.)  However, he soon learned that Knutson had merged with Temple-Inland Mortgage Corporation, which had changed its name to Guaranty Residential Lending, Inc. (Guaranty).  (*Id*. at 7-8.)  Plaintiff thought Guaranty might be related to the "failed Guaranty Bank," although his research could not confirm it.  (*Id*. at 8.)  As a result, on January 29, 2015, he sent the Federal Deposit Insurance Corporation (FDIC) a fax requesting that it research the deed of trust and let him know if it could provide him with a release of lien regarding the deed of trust.  (*Id*.)  Plaintiff contends that he also filed a first amended complaint on February 9, 2015, in order to remove Knutson as a defendant and add Guaranty as one.  (doc. 13 at 8.)  On February 11, 2015, BBVA Compass sent him an email and letter advising that Guaranty was a failed institution, that the FDIC became its receiver in August 2009, and that BBVA Compass acquired certain of Guaranty's assets from the FDIC, so only the FDIC could release the deed of trust.  (doc. 13 at 8; doc. 13-1 at 6-7.)  BBVA Compass also attached to the letter a copy of his father's loan

history from the FDIC.  (doc. 13 at 8; doc. 13-1 at 8-19.)  The letter and loan history suggest that the mortgage loan was paid off in December 2004.  (doc. 13 at 8; doc. 13-1 at 8-9.)

Plaintiff contends that after he realized the FDIC was a successor in interest to Knutson, he dismissed Guaranty from the lawsuit on February 17, 2015.  (doc. 13 at 8; doc. 13-1 at 38-41; docs. 5, 7.)  He advised the FDIC of the lawsuit, and on February 24, 2015, the FDIC sent him a Release of Deed of Trust, which he recorded the next day.  (doc. 13 at 9; doc. 13-1 at 44.)  The Release of Deed of Trust purported to release Plaintiff's father's deed of trust, and it acknowledged satisfaction of the deed of trust and the associated note.  (*Id*.)  It also listed the FDIC as owner and holder of the note and deed of trust in its capacity as receiver for Guaranty, the successor by merger to Knutson. (*Id*.)

Plaintiff contends that the Release of Deed of Trust is prima facie evidence that Defendant is not and never was mortgagee and/or holder of the note and deed of trust despite its multiple claims to the contrary.  (doc. 13 at 9.)  He asserts that it is also prima facie evidence that the note associated with the deed of trust has been satisfied and the deed of trust has been released.  (*Id*.)  He claims Defendant fraudulently sent mortgage letters and executed and recorded documents in Dallas County in which it alleged it was the mortgagee and/or holder of the note and deed of trust.  (*Id*.)

Plaintiff also alleges that the Property has been vacant, and substantial damage has occurred to it due to the fact that he and his siblings left after being told the Property had been foreclosed upon.  (*Id*.)  He claims that Defendant continues to maintain locks on the Property despite having no legal right to do so, and he and his siblings have been denied use of the Property or the ability to rent it.  (*Id*. at 9-10.)

The second amended complaint expressly asserts claims for wrongful foreclosure, criminal attempt, criminal conspiracy, "quiet title and declaratory judgment," and violation of the Fair Debt

Collection Practices Act (FDCPA) and the Texas Deceptive Trade Practices Act (DTPA). (doc. 13 at 11-32.)  It can  be liberally construed as asserting claims for violation of Section 51.002 of the Texas Property Code, the Texas Debt Collection Practices Act (TDCPA), Section 356.001 of the Estates Code, as well as for common law fraud, trespass to real property, and trespass to try title.[2] (*Id*. at 12-15, 18, 24-25.) Plaintiff seeks injunctive relief, actual damages, exemplary and/or punitive damages, and appears to seek a declaratory judgment that Defendant has no legal claim or right to the Property.[3]  (*See id.* at 32-34.)

On April 14, 2015, Defendant moved to dismiss Plaintiff's second amended complaint. (doc. 17.)  With a timely-filed response (doc. 19) and reply (doc. 20), the motion is now ripe.

## II.  RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiff's second amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 17.)

### A.    Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, courts cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).   Regardless of whether a plaintiff is

---

[2]Plaintiff's second amended complaint alleges that Defendant: violated Section 356.001 of the Texas Estates Code (doc. 13 at 13, 24); sent notices in violation of Section 51 of the Texas Property Code (*id*. at 24); violated the TDCPA (*id*. at 18); intended to defraud Plaintiff (*id*. at 13,15, 25); and took possession of the Property and locked Plaintiff out (*id*. at 12).  It seeks an order that Defendant remove the locks from the Property (*id*. at 14.).

[3]It seeks an order quieting the "right, title, and interest" in the Property in Plaintiff and his father's other heirs. (doc. 13 at 33.)

proceeding *pro se* or through counsel, pleadings must show specific, well-pleaded facts, not mere

conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.

1992). The court must accept those well-pleaded facts as true and view them in the light most

favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even

if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery

is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation

marks omitted). Still, a plaintiff must provide "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must

"raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint fails

to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim

to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged. The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-
> ity, it "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570;

*accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196. Pleadings in the 12(b)(6) context include attachments to the

complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v.*

7

*Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Plaintiff attaches to his second amended complaint copies of what he contends is a warranty deed granting the Property to his father; the deed of trust; the Assignment; copies of his father's and Aurora Luna's funeral cards; his QWR to Defendant; his father's certificate of death; a loan statement from Defendant to his father dated March 17, 2014; correspondence between Plaintiff and Defendant regarding his father's mortgage account; Defendant's probate filings regarding the Application for Dependent Administration on his father's estate; the Affidavit of Heirship; the Appointment of Substitute Trustee; the Notice of Acceleration; the Notice of Sale; correspondence between Plaintiff and BBVC Compass; the Release of Deed of Trust; Plaintiff's motion to dismiss Guaranty in this suit; and copies of court opinions regarding MERS. (doc. 13 at

36-107; doc. 13-1.)  These documents are considered part of the pleadings, so conversion of the motion to dismiss into a motion for summary judgment is unnecessary.

## B.     <u>Wrongful Foreclosure</u>

Defendant seeks to dismiss Plaintiff's wrongful foreclosure claim because it has not foreclosed on the Property, so no wrongful foreclosure can exist.  (doc. 17-1 at 12.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings."  *Matthews*, 2011 WL 3347920, at *2.  Recovery is not available merely upon the showing of a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling price resulting from the defect."  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Plaintiff's wrongful foreclosure claim is based on his allegations that (1) Defendant is not the mortgagee of the deed of trust, (2) that even if Defendant was the mortgagee, it violated Section

356.001 of the Texas Estates Code by posting the Property for foreclosure, and (3) Defendant filed and posted the Notice of Sale without serving or properly notifying all of his father's heirs in an attempt to defraud them.  (doc. 13 at 12-14.)  Plaintiff seeks an order requiring Defendant to immediately remove the locks on the Property.  (*Id*. at 14.)  He also seeks an order preventing Defendant from foreclosing the deed of trust, rescinding the vendor's lien, suing on the note, suing the heirs, attempting to sell the Property, or otherwise harassing the heirs without first providing conclusive evidence that it is the mortgagee or otherwise has a right to sell the Property.  (*Id*.)  He contends that a foreclosure occurred because Defendant took possession of the Property, locked it, and refused to remove the locks even though it is not the mortgagee.  (*Id*. at 12.)

Plaintiff's second amended complaint does not state any facts supporting the elements of a wrongful foreclosure action.  As he admits, a foreclosure sale of the Property has not yet occurred (*id*. at 12), and he therefore cannot allege that the Property has been sold for a grossly inadequate price.  *See Lucas v. Ocwen Home Loan Servicing,* No. 3:13-CV-1057-G, 2014 WL 7059274, at *8 (N.D.Tex. Nov. 21, 2014), *rec. adopted*, 2014 WL 7146033 (N.D.Tex. Dec. 12, 2014)(finding mortgagee failed to state a wrongful foreclosure claim where the Property had not been sold); *Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law.").  Accordingly, Defendant's motion to dismiss the wrongful foreclosure claim against it should be granted.

**C.     DTPA**

Defendant argues that Plaintiff's DTPA claim fails because he is not a "consumer" as that term is defined under the DTPA.  (doc. 17 at 14.)  Plaintiff appears to bring his claim under subsections 17.47, 17.58, 17.60, and 17.61 of the DTPA, alleging that Defendant engaged in illegal

and deceptive acts.  (*See* doc. 13 at 15-29.)  He seeks actual damages due to the physical damage to the Property and loss of rental income since April 2014.  (*Id*. at 15)

The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* Tex. Bus. & Com. Ann. Code § 17.50(a)(1) (West 2011). The DTPA defines "consumer" in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services."  Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007). To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint."  *Hurd*, 880 F. Supp. 2d at 766 (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).  Because the lending of money is not a good or service, a borrower whose sole objective is to obtain a loan is not a consumer under the DTPA.  *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)).  "A mortgagor qualifies as a consumer under the DTPA," however, "if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint."  *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 724–25 (5th Cir. 2013)(citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Riverside Nat'l Bank*, 603 S.W.2d at 175).

Here, Plaintiff contends that he is a consumer as that term is defined in the DTPA.  (doc. 13 at 15.)  He argues that he was the actual and intended beneficiary of the Property, and he is therefore a consumer under the DTPA in relation to the Property, not the mortgage.  (doc. 19 at 12.)  He claims his father intended that the Property pass to his heirs upon his death, and he and most of the other children lived in the Property at some point.  (*Id*.)  He argues that courts have held that

11

children can be consumers under the DTPA with regard to goods or services purchased by parents, and that actions can be brought under the Act as long as the real property and not the mortgage is the subject of the suit.  (*Id*.)

Even assuming Plaintiff, as his father's heir, could acquire his father's status as a consumer under the DTPA, he has failed to allege facts showing he or his father qualify as a consumer here. Although he contends that the Property is the subject of this lawsuit, his claims are premised on Defendant's allegedly deceptive actions concerning the purported servicing of the loan and attempted foreclosure of the Property.  His claim is not based on Defendant's alleged actions related to financing the purchase of the Property, and Plaintiff alleges that Defendant is not the original mortgagee (or even a successor to the original mortgagee) of the loan.  Therefore, the acts related to the purported servicing of the loan and the attempted foreclosure of the Property, rather than the Property itself, form the basis of his DTPA claim.  *See Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014)( "[Plaintiff] is not a consumer under this definition because the basis of her claim is the subsequent loan servicing and foreclosure activities, rather than the goods or services acquired in the original transaction); *Gatling v. CitiMortgage, Inc.*, No. H-11-2879, 2012 WL 3756581, at *13 (S.D.Tex. Aug. 28, 2012)(holding plaintiff was not a consumer under the DTPA where "her claim [was] based on acts occurring years after the financing transaction with [defendant]" and finding "how [plaintiff's] loan was administered–and the problems subsequently attending that administration–'is merely incidental to [her] prior objective to purchase a residence'")(citing *Woods v. Bank of Am., N.A.*, Civ. A. No. 3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D.Tex. Apr. 17, 2012)).  Accordingly, neither Plaintiff nor his father qualify as a consumer for purposes of the DTPA.  Defendant's motion to dismiss this claim should be granted.

**D.**     **FDCPA**

Defendant seeks to dismiss Plaintiff's claim under the FDCPA regarding its allegations "incident" to the "foreclosure activity" because the FDCPA does not regulate foreclosure activity. (doc. 17-1 at 16.)  It also argues that the FDCPA only regulates debt collectors, and Plaintiff does not allege that it is a debt collector under the FDCPA.  (*Id.*)  Plaintiff asserts claims for violations of §§ 1692e(2)(A) and 1692j(a).  (doc. 13 at 17, 20, 22-23, 26.)

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.'" *Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)).  It "prohibits a 'debt collector' from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (citing  15 U.S.C. §§ 1692e and1692f).  Debt collectors are also required to provide a proper validation notice of a consumer's rights and to refrain from engaging in collection activities or communications which "overshadow" or are "inconsistent with the disclosure of the consumer's right to dispute the debt" within the 30 days allowed for disputing the debt.  15 U.S.C. § 1692g(a) and (b) (West 2010).

Under the Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  *Id.* § 1692a(6).  There are two categories of debt collectors:  those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Garcia*, 2012 WL 3847362, at *6 (citing *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)).  "A person may 'regularly' collect debts even if debt collection is not the

principal purpose of his business." *Id.* Notably, the Act exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt *which was originated by such person.*" 15 U.S.C. § 1692g(a)(6)(F) (emphasis added). Pursuant to this exception, courts have concluded that "[t]he term 'debt collector' does not include lenders[,] . . . the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

Defendant argues that the "gist" of Plaintiff's allegations appears to be that it violated the FDCPA by initiating foreclosure proceedings without the proper authority to do so. (doc. 17-1.) It contends that the FDCPA does not regulate foreclosure activity, and any allegations "that conduct incident thereto" violated the FDCPA fail as a matter of law.[4]

Liberally construing new allegations in his response as an amendment to his second amended complaint, Plaintiff alleges that Defendant "regularly uses both instrumentalities of commerce and mails to both collect debts and to enforce security interests for [Defendant] and for other parties."[5] (doc. 19 at 10.) He also notes that the Notice of Acceleration stated that it was from

---

[4]Although Defendant cites to authority for its contention that foreclosure activity on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA (*see* doc. 17-1 at 16), "whether the initiation of foreclosure proceedings qualifies as collecting a debt under the FDCPA remains an open question in the Fifth Circuit." *See Turner v. Nationstar Mortgage, LLC*, No. 3:14-CV-1704-L, 2015 WL 585598, at *5 (N.D. Tex. Feb. 11, 2015); *Fath v. BAC Home Loans*, No. 3:12-CV-1755-O, 2013 WL 3203092, at *12 (N.D. Tex. June 25, 2013); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-CV-1855-K, 2013 WL 705110, at *10-11 (N.D.Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 705876 (N.D.Tex. Feb. 26, 2013); *see also Brooks v. Flagstar Bank, FSB*, Civ. A. No. 11-67, 2011 WL 2710026, at *6 (E.D.La. July 12, 2011)(citing *Zaltenbach v. Richards*, 464 F.3d 524, 529 n.5 (5th Cir. 2006).

[5]Plaintiff's new allegations in his response are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *see also Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir.2005) (explaining that a claim

a debt collector, but it failed to include the "validation of debts" language required in subsections 1692g(a)(1), (3), (4), and (5), and no separate validation notices were sent to him.  (*Id*. at 10-11.) Although he argues that Defendant wrongfully initiated foreclosure, several of his allegations go beyond simply initiating foreclosure.  For instance, Plaintiff alleges that Defendant violated the FDCPA by representing that it is the mortgagee and mortgage servicer of his father's loan, by instructing the mortgagors to send money to Defendant, by having an employee execute the Assignment on behalf of MERS, and by sending the Notice of Acceleration, in which it indicated a debt was owed to it.  (doc. 13 at 16-19, 22-23). Therefore, Plaintiff has adequately alleged that Defendant engaged in the collection of debt  apart from wrongfully initiating foreclosure.  *See Brooks*, 2011 WL 2710026, at *6 (applying the FDCPA where the plaintiffs adequately alleged that the defendant engaged in the collection of debt apart from the initiation of foreclosure itself); *Castrillo v. American Home Mortg. Servicing, Inc.*, 670 F.Supp.2d 516, 525 (E.D. La. 2009)(applying the FDCPA where the defendant's involvement went "beyond simply initiating foreclosure proceedings"); *see also Enis v. Bank of America, N.A.*, No. 3:12-CV-0295-D, 2013 WL 1721961, at *8 (N.D.Tex. Apr. 22, 2013) ("[A]n entity can still qualify as a "debt collector" under the FDCPA when engaging in foreclosure activities if, through its other activities, it satisfies the statutory definition.")(citing *Zaltenbach*, 464 F.3d at 529); *Preston v. Seterus, Inc.*, 931 F.Supp.2d 743, 765 (N.D.Tex. 2013).  Accordingly, Defendant's motion to dismiss Plaintiff's claim on this

---

raised for the first time in a response to a motion for summary judgment is not properly before the court); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court), citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990).  He has not sought or been granted leave to amend his complaint to add these allegations, and he has not shown that Defendant consented to an amendment.  *See* Fed. R. Civ. P. 15(a)(2).  Nevertheless, the *pro se* response may be liberally construed as a request for leave to amend his complaint. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir.1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

basis should be denied.

Defendant also argues that Plaintiff fails to allege that it is a debt collector under the FDCPA. (doc. 17-1 at 16.)  However, Plaintiff alleges that Defendant regularly uses instrumentalities of commerce and mails to both collect debts and to enforce security interests for other parties.  (doc. 19 at 10.)  He also alleges that Defendant is not the original mortgagee and that it was never properly assigned the note or deed of trust.  (*See* doc. 13 at 12-13, 16-17.)  Given the attached Release of the Deed of Trust from the FDIC and the lack of an assignment of the deed of trust to MERS, his complaint sufficiently pleads facts to show doubt as to the identity of the mortgagee and servicer. It sufficiently alleges that Defendant does not fall under the "lender" exception for a debt collector as outlined in 15 U.S.C. § 1692g(a)(6)(F).  Accordingly, Plaintiff has adequately alleged that Defendant is a debt collector under the FDCPA, and its motion to dismiss the FDCPA claim against it on this basis should also be denied.

**E.      TDCPA**

Defendant urges dismissal of Plaintiff's TDCPA claim because he "did not allege sufficient facts or the sections of the statute allegedly violated by" Defendant.  (doc. 17-1 at 10 n. 1.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers."  *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  The TDCPA defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection."  Tex. Fin. Code Ann. § 392.001(6) (West 2006).  In turn, "debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.* § 392.001(5).

16

Plaintiff alleges that Defendant violated the TDCPA by (1) instructing the mortgagors of his father's loan to send payments to it, (2) by claiming it was the mortgage servicer of his father's loan, and (3) by sending the Notice of Acceleration to Plaintiff.  (doc. 13 at 17-18, 23.)  Liberally construing allegations in his response as an amendment to his second amended complaint, he also alleges that he asserts his TDCPA claim under the "tie -in" section of the DTPA.  (doc. 19 at 14.)

Plaintiff fails to identify the specific provisions of the TDCPA that Defendant allegedly violated.  This failure alone warrants dismissal of his TDCPA claim.  *See Wilson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2257-O, 2014 WL 815352, at *7 (N.D.Tex. Mar. 3, 2014) (finding dismissal of Plaintiff's TDCPA claim was warranted where he did not identify the specific provisions of §§ 392.303(a) or 392.304(a) or a particular "prohibited practice" that the defendant allegedly violated); *see also Iqbal*, 556 U.S. at 678 (finding that to survive dismissal, the complaint must provide sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Defendant's motion to dismiss Plaintiff's TDCPA claim against it should be granted.

## F.    Texas Penal Code

Defendant seeks to dismiss Plaintiff's causes of action for violation of the Texas Penal Code, including his claims for criminal attempt and criminal conspiracy, on the basis that the Texas Penal Code does not provide private civil causes of action.  (doc. 17-1 at 17.)  Plaintiff contends that Defendant violated Section 15.01 of the Texas Penal Code by filing and posting the Notice of Sale and therefore wrongfully attempting to foreclose on the Property.  (doc. 13 at 29.)  He also contends that Defendant violated Section 15.02 by conspiring with its "agents, assigns, attorneys, employees,

officers, and successors" to wrongfully injure his father and his heirs.[6]  (*Id.* at 30.)

As several Texas and federal courts have noted, the Texas Penal Code does not create a private right of action.  *See Kiggundu v. Mortgage Elec. Registration Sys., Inc.*, No. CIV.A. 4:11-1068, 2011 WL 2606359, at *6 n. 79 (S.D. Tex. June 30, 2011), *aff'd*, 469 F. App'x 330 (5th Cir. 2012) (citations omitted); *Florance v. Buchmeyer*, 500 F.Supp.2d 618, 635 (N.D. Tex. 2007); *Delgado v. Combs*, No. 07-11-00273-cv, 2012 WL 4867600, at *2 (Tex. App.–Amarillo Oct. 15, 2012, no pet.)("The Texas Penal Code is criminal in nature and does not create any private civil causes of action."); *Hamilton v. Pechacek*, 319 S.W.3d 801, 813 (Tex. App.–Fort Worth 2010, no pet.) ("[T]he Texas Penal Code does not create a private cause of action."); *see also Breitling v. LNV Corporation*, No. 3:15-CV-0703-B, 2015 WL 5896131, at *8 (N.D.Tex. Oct. 5, 2015)(dismissing the plaintiff's criminal conspiracy claims because the court found support for the defendants' position that there is no civil cause of action for criminal conspiracy under the Texas Penal Code.)

Defendant's motion to dismiss Plaintiff's claims against it under the Texas Penal Code should be granted.

## G.     Quiet Title

Defendant seeks to dismiss Plaintiff's quiet title claim on the basis that the second amended complaint contains no factual allegations regarding the strength of the title to his Property.  (doc. 17-1 at 18.)  Defendant argues that the second amended complaint instead focuses on the purported

---

[6]In his response, Plaintiff contends that the criminal conspiracy cause of action should have been framed as a civil conspiracy cause of action, and he requests an opportunity to amend his second amended complaint.  (doc. 19 at 15.)  His request does not comply with Local Rule 15.1 of the Local Civil Rules for the Northern District of Texas, which provides that when a party files a motion for leave to file an amended pleading, the party must attach the proposed amended pleading as an exhibit.  Compliance with the rules of procedure is required of all parties, whether or not they are represented by counsel, and leave to amend may be denied for non-compliance.  *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation).  Plaintiff's request is **DENIED without prejudice** to filing a motion that complies with the applicable rules of civil procedure and the local rules.

weakness of Defendant's interest in the Property by virtue of an alleged improper assignment from MERS and an unexplained release from the FDIC. (*Id*.) Additionally, Defendant contends that Plaintiff's own allegations reveal that he cannot demonstrate his superior title to the Property because there are multiple other heirs to the Property that are not parties to the lawsuit, and Plaintiff has failed to allege any facts demonstrating that he is the executor of his father's estate. (*Id*.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)(citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 766 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)). Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Here, Plaintiff's second amended complaint alleges that his father owned the Property before he died intestate. (doc. 13 at 3.) He contends that he and his siblings, as his father's heirs, inherited the Property and are therefore the lawful owners of it. (*Id.* at 12-13, 15.) He also alleges that

Defendant is not the mortgagee or mortgage servicer of the Property because it is not the original mortgagee, and there is no valid assignment of the deed of trust or any endorsement of the note to it.  (*Id*. at 12-13, 16-17.)  Plaintiff additionally alleges that the lien on which Defendant seeks to foreclose has been released, and the loan has been satisfied.  (*Id*. at 8-9.)  He has sufficiently alleged an interest in the Property for purposes of Rule 12(b)(6).  *See Metcalf v. Deusche Bank Nat. Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *7 (N.D.Tex. June 26, 2012) (finding argument that plaintiffs have not pleaded any facts demonstrating the strength of their title in support of their suit to quiet title lacked force where they alleged they were the owners of the property under a deed of trust recorded in the county records); *Henry v. Chase Home Fin., LLC*, No. H-11-0668, 2011 WL 6057505, at *5 n.2 (S.D.Tex. Dec. 6, 2011) (denying motion to dismiss quiet title claim on the basis of insufficient allegations of the strength of plaintiff's title because defendant failed to explain why allegations that plaintiff owned property, had been in possession of property, and had paid property taxes was insufficient to plead an interest).

 Defendant's motion to dismiss this claim should therefore be denied.

## H.    <u>Injunctive Relief</u>

Defendant seeks to dismiss Plaintiff's request for injunctive relief on the basis that he failed to sufficiently plead any claim giving rise to a plausible right to relief.  (doc. 17-1 at 12.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).   Here, Plaintiff seeks a temporary injunction to prevent Defendant from foreclosing upon or selling the Property.  (doc. 13 at 11.)

Plaintiff has alleged that Defendant is not the mortgagee or mortgage servicer of the Property

because it is not the original mortgagee and there is no valid assignment of the deed of trust or any endorsement of the note to it. (doc. 13 at 12, 16-17.) Additionally, he provides a purported Release of Deed of Trust from the FDIC. (doc. 13-1 at 46.) When a party who is not named in the original deed of trust seeks to foreclose, it must be able to trace its rights under the deed of trust back to the original holder. *See Rice v. Bank of New York*, No. 4:11-CV-4220, 2012 WL 3685981, at *2 (N.D.Tex. Aug. 24, 2012). Absent proof that it is the current mortgagee of the subject property, a servicing entity or alleged mortgagee has no right to foreclose under Texas law. *See id.*, *Shelton v. Flagstar, F.S.B.*, No. H-11-3805, 2012 WL 1231756, at *2 (S.D.Tex. Apr. 12, 2012). Therefore, Plaintiff has sufficiently pled a substantial likelihood of success on the merits as to Defendant's contractual standing to foreclose. *See Rice*, 2012 WL 3685981, at *2 (finding a mortgage debtor may challenge the "contractual standing" of the foreclosing party); *Shelton*, 2012 WL 1231756, at *2 (denying Rule 12(b)(6) motion as to a request for declaratory and injunctive relief where, *inter alia*, there was doubt on the pleadings as to the identity of the mortgagee and servicer). Moreover, Plaintiff has pled a substantial likelihood of success regarding his FDCPA and quiet title claims. Accordingly, Defendant's motion to dismiss his request for injunctive relief should be denied.

I.    **Texas Estates Code, Texas Property Code, and Fraud**

Plaintiff also brings claims for violation of Section 356.001 of the Texas Estates Code, violation of section 51.002 of the Texas Property Code and common law fraud. (*See* doc. 13 at 9, 13, 15-29; doc. 19 at 14-15.)

Defendant acknowledges that Plaintiff makes references to the Texas Estates Code and to its "intent to defraud him." (doc. 17-1, fn. 2.) It briefly states in a footnote that to the extent Plaintiff is bringing separate claims based on these references, the claims fail under Rule 12(b)(6)

for failure to state a claim and under Rule 9(b) for failure to plead fraud with particularity.  (*Id.*)

However, Defendant fails to explain how Plaintiff's allegations in support of his claims for violation

of the Texas Estates Code and for fraud fail to state a claim under 12(b)(6) or under Rule 9(b).  Its

conclusory statement, without any explanation or support, is simply not persuasive.  Because

Defendant has not shown that Plaintiff failed to state for violation of the Texas Estates Code and for

common law fraud, its motion to dismiss those claims should be denied.

Defendant makes arguments for the first time regarding Plaintiff's claims for violation of the

Texas Property Code and the Texas Estates Code.  (doc. 20 at 2-4.)  Because the *pro se* plaintiff did

not have a meaningful opportunity to respond to these new bases for dismissal, Defendant's new

arguments are not considered.  *See Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03-CV-0330-G, 2003

WL 21435511, at *1 (N.D.Tex. June 10, 2003)("[A] court generally will not consider arguments

raised for the first time in a reply brief.").

## III.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED in part and DENIED in part**, and

Plaintiff's claims against it for wrongful foreclosure, criminal attempt, criminal conspiracy, and

violation of the DTPA and the TDCPA should be dismissed.  Plaintiff's claims for common law

fraud, trespass to real property, trespass to try title, quiet title, declaratory relief, injunctive relief,

and violations of the FDCPA, Section 51.002 of the Texas Property Code, and Section 356.001 of

the Texas Estates Code should remain pending for trial.[7]

---

[7]Defendant did not move to dismiss Plaintiff's claims for trespass to try title, trespass to real property, and
declaratory judgment.

**SIGNED** this 9th day of November, 2015.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE